**MEMORANDUM OPINION**

August 27, 2008

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

In re:

| | |
|---|---|
| GEORGE GLEN WHITAKER | Case No. 07-32652 |
| a/k/a GLEN WHITAKER | Chapter 7 |
| a/k/a G. GLEN WHITAKER | |
| d/b/a WHITAKER BUILDING COMPANY | |

                               Debtor

      THOMAS M. KOENIG
      ANNA MARIE KOENIG

                               Plaintiffs

v.                                                              Adv. Proc. No. 07-3117

      GEORGE GLEN WHITAKER

                               Defendant

BEFORE THE HONORABLE RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

      FOR PLAINTIFFS:

      MAURICE K. GUINN, ESQ.
      Post Office Box 1990
      Knoxville, Tennessee 37901

      FOR DEFENDANT/DEBTOR:

      JAMES R. MOORE, ESQ.
      Post Office Box 1790
      Knoxville, Tennessee 37901

1    THE COURT:  This adversary proceeding is before the court upon the

2    Complaint filed by the Plaintiffs on November 20, 2007, seeking a judgment against the

3    Defendant and a determination that the judgment is nondischargeable under 11 U.S.C.

4    § 523(a)(2)(A) and/or (6).  Pursuant to the Pretrial Order entered on February 15, 2008,

5    I am called upon to resolve the following issues:  (1) whether the Defendant obtained

6    monies from the Plaintiffs by false pretenses, false representation, or actual fraud;

7    (2) whether the Defendant willfully and maliciously converted monies obtained from the

8    Plaintiffs; (3) if the court determines that the Plaintiffs are entitled to a

9    nondischargeable judgment, the amount of the judgment; and (4) if the court determines

10   that the Plaintiffs are entitled to a nondischargeable judgment, whether they are also

11   entitled to pre-judgment interest.

12        Trial was held on August 19, 2008, and the record before me consists of

13   Stipulations filed by the parties on July 18, 2008, fourteen exhibits admitted into

14   evidence, and the testimony of six witnesses, Chris McCall, Alton G. Mason, Jr., A.J.

15   Minnis, both Plaintiffs, and the Defendant.

16        This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

17        On January 23, 2006, the Plaintiffs entered into a Residential Construction

18   Contract with Glen Whitaker Building Company, Inc., for the construction of a house

19   on Beals Chapel Road in Loudon, Tennessee, for the price of $1,188,298.00.  Trial

20   Exhibit 1 at ¶ 3.A.  The Defendant, the president and sole shareholder of Glen Whitaker

21   Building Company, Inc., signed the Residential Construction Contract on behalf of his

22   company.  Because it is undisputed that all actions complained of by the Plaintiffs are

23   attributable directly to the Defendant in his conduct of the business of Glen Whitaker

24   Building Company, Inc., and the Defendant does not attempt to use the Glen Whitaker

25   Building Company, Inc. corporate veil to escape personal liability, all references in this

Memorandum will be to the "Defendant," notwithstanding that the Residential Construction Contract, material bank accounts, invoices, checks, and related documents admitted into evidence are in the name of Glen Whitaker Building Company, Inc., which was administratively dissolved by the State of Tennessee on August 21, 2006. Stipulations at ¶ 10.

Under the terms of the Residential Construction Contract, the Plaintiffs were to make interim payments to the Defendant by the 10th day of each month "based on work performance and materials delivered." Trial Exhibit 1 at ¶ 3.B. Work on the house was to commence upon payment of a $60,000.00 deposit to the Defendant, which the Plaintiffs made on March 3, 2006. Trial Exhibit 1 at ¶ 4; Stipulations at ¶ 3.

On May 18, 2006, the Defendant contacted the Plaintiffs and requested another $60,000.00 draw, which they paid on May 19, 2006. Trial Exhibit 2; Stipulations at ¶¶ 4-5. Construction of the Plaintiffs' house by the Defendant ceased on June 30, 2006, and on October 13, 2006, the Plaintiffs filed a lawsuit against the Defendant in the Chancery Court for Knox County, Tennessee, seeking recovery of the $60,000.00 payment. Trial Exhibit 4; Stipulations at 7. In March 2007, the parties agreed to a continuance of the state court lawsuit in exchange for a $15,000.00 payment to the Plaintiffs, and trial was scheduled for August 23, 2007, but was stayed by the filing of the Defendant's bankruptcy case on August 20, 2007. Stipulations at ¶ 8.

By this adversary proceeding, the Plaintiffs contend that the Defendant obtained the second $60,000.00 draw through false pretenses, false representations, or actual fraud. The Plaintiffs also contend that the Defendant willfully and maliciously converted the $60,000.00 they paid him on May 19, 2006, for his own benefit and did not use the money for the purposes for which it was advanced; i.e., to pay expenses incurred on their project.

The Plaintiffs seek a judgment against the Defendant along with a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a), which, as material to this adversary proceeding, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or] . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Section 523(a) is construed liberally in favor of debtors and strictly against the party seeking a determination of nondischargeability, who also bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). This court possesses both the jurisdiction and the authority not only to adjudicate the Plaintiffs' claims but to additionally award any necessary damages as measured by state law. *See Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).

The Plaintiffs first seek a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A). In order to satisfy this subsection, they must prove that the Defendant obtained money, property, or services – $60,000.00 in this case – through material misrepresentations which he knew were false or were made with gross recklessness; that the Defendant intended to deceive the Plaintiffs; that they justifiably

4

relied upon the Defendant's false representations; and that their reliance was the proximate cause of their loss. *See Copeland*, 291 B.R. at 760. This requires proof first that the Defendant made a material misrepresentation or "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision" which led to his receiving the $60,000.00 from the Plaintiffs on May 19, 2006. *See Copeland*, 291 B.R. at 761 (quoting *Candland v. Insurance Company of North America (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996)). In addition, the Plaintiffs must show that the Defendant's conduct was "somewhat blameworthy." *Copeland*, 291 B.R. at 759.

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Copeland*, 291 B.R. at 760.

The Plaintiffs must also prove that the Defendant made false representations which he knew or should have known would convince the Plaintiffs to provide him with the additional $60,000.00, evidencing an intent to deceive. "'Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test.'" *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Intent may be "inferred as a matter of fact" based on the totality of the circumstances by examining the Defendant's conduct to determine if he presented the Plaintiffs with "'a picture of deceptive conduct

5

1  . . . indicat[ing] an intent to deceive.'" *Copeland*, 291 B.R. at 766 (quoting *Wolf v.*

2  *McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)).  "As applied to

3  § 523(a)(2)(A), the concept of misrepresentation includes a false representation as to

4  one's intention, such as a promise to act. A representation of the maker's own intention

5  to do . . . a particular thing is fraudulent if he does not have that intention at the time he

6  makes the representation." *Copeland*, 291 B.R. at 763.

7        A determination of nondischargeability under § 523(a)(2)(A) also requires

8  justifiable reliance by the Plaintiffs, meaning they must prove that they actually relied

9  on the Defendant's representations and, based upon the facts and circumstances known

10  to them at the time, their reliance was justifiable.  *Copeland*, 291 B.R. at 767.

11  Nevertheless, justifiable reliance can be found even if the Plaintiffs "'might have

12  ascertained the falsity of the representation had [they] made an investigation.'"

13  *Copeland*, 291 B.R. at 767 (quoting *Commercial Bank & Trust Company v. McCoy (In*

14  *re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)).

15        Here, it is undisputed and, in fact, stipulated that the Defendant represented

16  to the Plaintiffs the purpose of the May 19, 2006 $60,000.00 payment.  The parties

17  stipulate the following at paragraph 4 of the Stipulations filed on July 18, 2008:

18        On May 18, 2006, the debtor requested a second $60,000.00

19        payment from the Koenigs.  The debtor told Anna Marie Koenig

20        and/or Thomas M. Koenig that there were large upcoming

21        expenses and he needed the monies to pay for materials and/or

22        subcontractors on the Koenigs' project.

23        Discussing the circumstances surrounding this transaction in considerably

24  more detail at trial, Mrs. Koenig testified that on the morning of May 18, 2006, she

25  received a call at home from the Defendant, who stated with "some urgency," that he

6

needed an additional $60,000.00 because of some "large, upcoming expenses" on the Plaintiffs' construction project.  Mrs. Koenig testified that she called her husband, a physician, at his office to advise him of the Defendant's request and that her husband was upset because the requested draw was not customary under the contract, but that he agreed to provide the $60,000.00 to the Defendant.

Dr. Koenig testified that he received a telephone call from his wife on May 18, 2006, informing him of the Defendant's request for the second $60,000.00 draw for upcoming expenses on their house; that he had to go through extraordinary procedures with his credit union to obtain these funds; that he told the Defendant that this would be the last time he would be able to make a call for funds other than on the 10th of the month; and that he wanted assurance that the funds were for upcoming expenses on their house.  As noted, the Defendant stipulated and the record establishes that the Defendant represented to both Dr. and Mrs. Koenig that this $60,000.00 was "needed . . . to pay for materials and/or to pay subcontractors" on the Plaintiffs' project.

The Plaintiffs gave the Defendant the $60,000.00 on May 19, 2006, by way of a draft drawn on an account with the ORNL Federal Credit Union which the Defendant deposited the same day to his account, also at the ORNL Federal Credit Union.  At the time of the deposit, the Defendant's account balance was $25,835.13.  Thus, after depositing the Plaintiffs' $60,000.00, the balance in the account was $85,835.13.

However, also on May 19, 2006, following the Defendant's deposit of the Plaintiffs' $60,000.00, three drafts, totaling $61,904.00, all of which were issued by the Defendant in payment of invoices attributable to expenses incurred on construction projects unrelated to the Plaintiffs, cleared the Defendant's account, as follows:  draft #1008 dated May 12, 2006, payable to Cogdill Drywall in the amount of $24,000.00;

draft #1018 dated May 19, 2006, payable to Horizon Products in the amount of $34,804.00; and draft #1019 dated May 19, 2006, payable to Windows Plus in the amount of $3,000.00.  A fourth draft, #1011, in the amount of $100.00, also cleared the Defendant's account on May 19, 2008, after the Defendant deposited the Plaintiffs' $60,000.00.  The record does not, however, establish the date the Defendant issued this draft or the name of the payee.  The ending balance in the Defendant's ORNL Federal Credit Union account on May 19, 2006, was $23,391.13.  *See* Collective Trial Exhibit 3.

Two more drafts, #1012 and #1013, both dated May 19, 2006, payable, respectively, to Mike's Trim in the amount of $11,350.00 and Precision Masonry in the amount of $3,000.00, cleared the Defendant's account on May 22, 2006, leaving an ending balance in the Defendant's account on that date of $9,581.13.  *See* Collective Trial Exhibits 3 and 14.  Again, each of these drafts was issued by the Defendant in payment of an invoice attributable to expenses unrelated to the Plaintiffs' project.

On May 23, 2006, four additional drafts issued by the Defendant on May 19, 2006, cleared his ORNL Federal Credit Union account.  These drafts, the first three of which were issued in payment of invoices for expenses wholly unrelated to the Plaintiffs' project, were draft #1010 payable to A-1 Stucco in the amount of $3,300.00; draft #1014 payable to David Engle in the amount of $2,250.00; draft #1017 payable to Pure Energy in the amount of $2,400.00; and draft #1009 in the amount of $272.90, the date and payee of which were not established at trial.  *See* Collective Trial Exhibits 3 and 14.  On May 23, 2006, the Defendant's account evidenced a closing balance of $1,358.23.  There were no deposits made to the Defendant's account between May 19, 2006, and May 23, 2006, other than the $60,000.00 given the Defendant by the Plaintiffs.

Both in his testimony at trial and in the parties' Stipulations, the Defendant acknowledged that in February and March 2006, he knew his business was in financial trouble and in May 2006, he "was paying the supplier that was yelling the loudest." Stipulations at ¶¶ 13-14.

The Defendant entered into evidence, through the testimony of Mr. McCall and Mr. Minnis, proof that work on the Plaintiffs' project continued following the $60,000.00 payment on May 19, 2006, which included laying the foundation blocks, waterproofing, installation of plumbing, and pouring of concrete for the basement walls. The invoices evidencing these services, entered into evidence as Collective Exhibit 6, total $49,330.41, which is close to the estimate of $51,000.00 assigned by the Defendant to the cost of the totality of the work he performed on the Plaintiffs' construction site, but does not include an invoice dated July 27, 2006, in the amount of $85.32 from Tennessee Valley Waterproofing for finance charges assessed on its previously unpaid bill. The Debtor's estimate is confirmed by the Plaintiffs' expert, Alton G. Mason, a general contractor and principal in Tom Mason Construction, Inc., who testified that, in his opinion, the cost of the construction performed by the Defendant on the Plaintiffs' project was between $53,000.00 and $54,000.00. The Defendant argues that his later incurrence of expenses totaling an amount near $60,000.00 evidences his lack of an intent to deceive.

The fact that the Defendant may have incurred expenses attributable to the Plaintiffs' project after May 19, 2006, does not alter the fact that he obtained the $60,000.00 payment only upon representing to the Plaintiffs that he needed it to pay existing and "large, upcoming expenses that he needed to have the money for" on their project. It is clear that the Defendant never intended to use these funds to pay the Plaintiffs' expenses. Although there is nothing in the Residential Construction Contract

1   requiring the Defendant to keep the Plaintiffs' funds segregated from other funds, he

2   was nonetheless under an obligation to use the Plaintiffs' money as he had represented.

3         The falsity of the Defendant's May 18, 2006 representation to the Plaintiffs

4   that he required the second $60,000.00 to pay for materials and/or to pay subcontractors

5   on the Plaintiffs' project is clearly established by the fact that on May 19, 2006, the day

6   the Defendant deposited the $60,000.00 in his account, and on May 22 and 23, 2006,

7   eight drafts totaling $84,104.00 issued by the Defendant in payment of past-due

8   invoices for expenses incurred on jobs wholly unrelated to the Plaintiffs cleared his

9   account. With the exception of draft #1008, payable to Cogdill Drywall in the amount

10  of $24,000.00, which the Defendant issued on May 12, 2006, the remaining seven

11  drafts, totaling $60,104.00, were issued by the Defendant to the payees on the same day

12  they were deposited, May 19, 2006. Clearly, the Defendant either wrote these drafts

13  prior to his deposit of the Plaintiffs' $60,000.00 in anticipation of the receipt of the

14  same or wrote them immediately upon making the deposit. Regardless of which

15  scenario may be correct, the Defendant delivered these seven drafts to the payees on

16  May 19, 2006, and they were presented for payment and paid on that date. The falsity

17  of the Defendant's representation to the Plaintiffs that he needed the second $60,000.00

18  to pay expenses on their project is irrefutable. This representation was nothing more

19  than a ploy by the Defendant to induce the Plaintiffs into providing him the funds to pay

20  suppliers who were, as the Defendant testified, "yelling the loudest."

21        The court finds that the Plaintiffs were justified in relying upon the

22  Defendant's representations. At trial, both Plaintiffs testified that they believed the

23  Defendant was trustworthy and easy to work with, having chosen him to construct their

24  house following interviews with him and others in January 2006. Dr. Koenig testified

25  that prior to entering into the January 23, 2006 Residential Construction Contract with

the Defendant, the Plaintiffs had discussed with him the number of houses he had previously constructed as well as the number of houses he currently had under construction, and that the Defendant told him that he was quite experienced in building houses of the size of the Plaintiffs'. Both Plaintiffs testified that they spoke with the Defendant before the May 19, 2006 payment was made; that both were assured that the funds were needed for their job and such a request would not occur again; and that neither of them had any significant problem with the Defendant prior to May 19, 2006.

Based upon the record before me, I find that the Plaintiffs have met their burden of proof by a preponderance of the evidence that the Defendant obtained the $60,000.00 payment on May 19, 2006, through false pretenses and false representations; that the Defendant knew at the time he made the representations they were false but would induce the Plaintiffs into providing him with the money requested; and that the Plaintiffs' reliance upon the Defendant's representations was justified. Accordingly, the Plaintiffs are entitled to a judgment against the Defendant that is nondischargeable under § 523(a)(2)(A).

The Plaintiffs also aver the applicability of § 523(a)(6) which provides for nondischargeability of a debt based upon a "willful and malicious" injury. In order to prevail under this subsection, the Plaintiffs must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998). This requires proof that the Defendant either desired to cause the consequences of his actions or believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a

result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10). Based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543.

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *South Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash America Financial Services v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007), requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Company v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004).

"An act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' . . . [and does] 'not require ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Lack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *Lupo*, 353 B.R. at 550. In other words, nondischargeability under § 523(a)(6) requires proof that the Plaintiffs were injured and that the Defendant's deliberate or intentional actions caused their injury, but "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Fox*, 370 B.R. at 119.

Under Tennessee law, conversion is an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). An act of conversion constituting a willful and malicious injury within the scope of § 523(a)(6) depends upon whether or not that party intended to cause the harm or was substantially certain that such harm would occur. *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

The actions of the Defendant leading to his procurement of the $60,000.00 from the Plaintiffs on May 19, 2006, having been discussed previously in depth, need not be reiterated here in their entirety. At the time the Defendant requested the additional $60,000.00 from the Plaintiffs, he was in obvious financial distress, as acknowledged by his own testimony, as well as that of Mr. Minnis, his long-time superintendent and friend, who testified that the Defendant "was not himself" in May 2006. The Defendant testified, and the record establishes that, in addition to the $60,000.00 received from the Plaintiffs, the Defendant was infusing his own funds, as well as money borrowed from his mother, into his construction company to try and keep it from going under and that he was paying the vendors and subcontractors who were making the loudest demands. While this sort of negligence and/or gross recklessness with respect to the Plaintiffs' money, in and of itself, may not fall within the ambit of "willful" and "malicious" as contemplated by § 523(a)(6), the Defendant's material misrepresentations concerning his reasons and intended use for obtaining the $60,000.00 from the Plaintiffs were knowingly false and thus evidenced an intent to deceive in conscious disregard of the Plaintiffs or the Defendant's obligations to them.

Similarly, the Defendant's actions were "willful," The Defendant stipulated

that as early as February or March 2006, he knew that his business was failing. *See* Stipulations at ¶ 14.  He testified that he was fired on two projects in May 2006, was not being paid on other projects, had trade creditors cutting off his accounts, and was borrowing money.  Given his financial problems and his lack of income from other sources, the Defendant obtained the $60,000.00 from the Plaintiffs, never intending to use it for the reasons represented to the Plaintiffs.  Rather, his intention from the outset was to convert the Plaintiffs' funds to his own use to pay invoices from "suppliers yelling the loudest" and not suppliers associated with the construction of the Plaintiffs' home.

Based on the evidence before me, I find that the Defendant willfully and maliciously converted the Plaintiffs' funds, and his actions therefore fall within the scope of § 523(a)(6) and are nondischargeable under that section.

The Plaintiffs seek a judgment in the amount of $45,000.00, plus pre-judgment interest, and the costs of this proceeding.  Based upon the record before me, I have determined that the Plaintiffs are entitled to a nondischargeable judgment against the Defendant in the amount of $45,000.00, representing the $60,000.00 obtained by the Defendant on May 19, 2006, less an agreed upon credit for $15,000.00 paid to the Plaintiffs in March 2007.  *See* Stipulations at ¶ 8.

The court also finds that the Plaintiffs are entitled to pre-judgment interest. "'[T]he award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court. Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole.'" *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 818 (9th Cir. 1994) (quoting *Purcell v. United States*, 1 F.3d 932, 942-43 (9th Cir. 1993)); *see also Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*,

1   850 F.2d 1275, 1281 (8th Cir. 1988) (finding that since there is no statutory authority

2   mandating the court to award pre-judgment interest, such awards "are discretionary and

3   depend on whether the preferred creditor could have ascertained the amount of the

4   preferential payment without a judicial determination."). If awarded, pre-judgment

5   interest, at the current federal rate prescribed in 28 U.S.C. § 1961 (2008), accrues from

6   the date of demand on the defendant or the date that the adversary proceeding

7   commenced. *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.)*,

8   124 B.R. 948, 1006 (Bankr. S.D. Ohio 1990); *see also Emerson v. Maples (In re Mark*

9   *Benskin & Co., Inc.)*, 161 B.R. 644, 651 (Bankr. W.D. Tenn. 1993). In this case, the

10  Plaintiffs were required to find another contractor for their house, which Mrs. Koenig

11  testified is still not entirely completed, and incurred additional costs. Pre-judgment

12  interest from October 13, 2006, the date upon which the Plaintiffs made demand from

13  the Defendant by the filing of their Complaint in the Knox County Chancery Court

14  seeking to recover the $60,000.00 May 19, 2006 payment, is appropriate. *See*

15  Stipulations at ¶ 7.

16          Additionally, all costs of this proceeding shall, pursuant to Rule 7054(b) of

17  the Federal Rules of Bankruptcy Procedure, be taxed to the Defendant.

18          This Memorandum constitutes findings of fact and conclusions of law as

19  required by FED. R. CIV. P. 52(a), made applicable to this adversary proceeding by

20  Rule 7052 of the Federal Rules of Bankruptcy Procedure. I will not ask Ms. Dunn to

21  transcribe my opinion. If it is transcribed at the request of either party, I will review

22  and make appropriate non-substantive corrections, after which the opinion will be filed

23  on the Electronic Case Filing System and served on parties. A judgment consistent with

24  this memorandum will be entered this afternoon.

25

1    FILED: September 15, 2008

2                                                  /s/ *Richard Stair, Jr.*
                                                  RICHARD STAIR, JR.

3                                                  U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25